IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRANDON LIVINGSTON, A Minor,
by his Parents and Guardians,
Mark Livingston and Lorraine Livingston,
KAZMARE LIVINGSTON, A Minor,
by her Parents and Guardians,
Mark Livingston and Lorraine Livingston,
MARK LIVINGSTON,
LORRAINE LIVINGSTON,
RENE SURGEST, and
WANDA JONES-DIXON,
          Plaintiffs,                    04cv840

     v.                             **Electronically Filed**

BOROUGH OF MCKEES ROCKS,
OFFICER SHAWN BARGER,
MCKEES ROCKS POLICE DEPARTMENT,
OFFICER DOLPHO,

        Defendants.

**MEMORANDUM OPINION ON SUMMARY JUDGMENT MOTIONS**

**August 17, 2005**

      This is essentially a Pennsylvania common law and statutory dog bite case, in which one

of the minor plaintiffs, Brandon Livingston, was mauled and bitten by a police dog, the Borough

of McKees Rocks Police Department's K-9 Dolpho, causing him significant physical and

psychological injuries.  Although this is a serious claim, as is the claim of his parents and sibling

who witnessed all or some of the mauling, it is not a claim that is typically litigated in federal

court in the absence of diversity jurisdiction.  It has been made into a federal case because the

Livingstons have expanded their claims to include civil rights claims, and non-related

individuals have joined as plaintiffs in a consolidated complaint alleging a pattern and practice of

racial hostility, profiling, and other discrimination on the basis of race against these plaintiffs

and other African-Americans in the Borough of McKees Rocks.

Before this Court are three motions for summary judgment filed by defendants directed to the three sets of plaintiffs: respectively, the motion for summary judgment against the Livingston plaintiffs (Document No. 70); the motion for summary judgment against Wanda Jones-Dixon (Document No. 74); and the motion for summary judgment against Rene Surgest (Document No. 78).[1]  After careful consideration of the motions for summary judgment, the response thereto, the memoranda of law in support and in opposition to summary judgment, the respective statements of material facts, and the voluminous depositions, documents and other supporting materials for and against summary judgment, the Court will grant summary judgment as to all of the federal and most of the state law claims against all defendants, but will dismiss the Livingstons' state claims without prejudice, which will permit them to pursue their claims in the appropriate state court.

<u>Background and Claims Raised</u>

Plaintiffs' second amended complaint ("Complaint") raises "actions under the Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended, The Pennsylvania Whistleblower Act . . . , as amended, 43 P.S. 1421 et seq.  and state common law to correct deprivations of civil rights and to recover damages for illegal, recklessly indifferent and grossly negligent actions against plaintiffs by defendants."  Complaint, ¶ 1.  The factual background set forth in the Complaint, and gleaned from this Court's reading of the parties' statements of material facts and the depositions and other supporting materials, is as follows:

_____

[1]  There was a fourth "set" of plaintiffs, minor plaintiff Angela Kirkland who also was bitten by Dolpho, and her parents, as guardians.  The Kirklands settled their claims against the defendant.

<u>        The Livingstons</u>

The Livingston family, Mark and Lorraine and their children Brandon and Kazamare, both minors at the time of the police dog attack, lived in McKees Rocks.  On June 7, 2002, at about 10:20 pm, McKees Rocks Police Officer Shawn Barger was pursuing a criminal suspect through the Livingstons' neighborhood with Dolpho, his K-9 partner, when Dolpho suddenly and without warning veered toward Brandon and some other children who had been playing outside the Livingstons' home, and attacked him, dragging him into the street.  Kazamare saw him attacked; Brandon's parents ran toward the street immediately upon hearing the commotion, and observed Officer Barger attempting to get Dolpho off Brandon, without much success.  The dog had Brandon by his leg.

Mark Livingston states that he thought about hitting the dog with a chair, but he got "looks" from other officers present who unsnapped the safety snaps of their firearms; he felt intimidated, like they were going to do something to him if he tried to harm the dog.  None of the officers, however, said anything or drew their weapons.  Eventually, Officer Barger pulled Dolpho off and restrained the dog, and another officer and Brandon's parents picked him up and took him to their porch, then to the hospital in their car, but not before, the Livingstons claim, the police blocked them from moving Brandon and rudely and profanely ordered them to wait for the ambulance.  Mr. and Mrs.  Livingston did not wait; rather, Mrs. Livingston took Brandon to the hospital, but she had to back down the street because police cars were blocking the way.

Brandon was treated at the hospital, and released that night.  Since then he has had other medical treatment, and has obtained psychological treatment for his emotional trauma.  Kazamare and Brandon's parents all were in the "zone of danger" of the attack and witnessed

3

some part of the attack, and the aftermath, and all claim emotional trauma and damages in their own right.

Subsequent to this incident plaintiffs made "appearances on media outlets and severely criticized McKees Rocks police for their poor handling of this situation and for the improper training of the officers and the K-9 dogs and other indignities that they suffered." Complaint, ¶ 24.  What followed was a "concerted campaign" of retaliatory harassment and intimidation that eventually drove the Livingstons out of the neighborhood, causing them financial hardship, emotional damages, humiliation and distress. Complaint, ¶ 25.

According to the Livingstons' deposition testimony, "Responsive Concise Statement in Opposition to Summary Judgment," (Document No.  85), at ¶¶ 21-24, this alleged harassment consisted of the following:

▸       their adult son, Chai, was pulled over in McKees Rocks for running a stop sign and given a ticket; however, he admitted he ran the stop sign and his ticket was reduced at the hearing so he would not get "points";

▸       the Livingstons were given a "citation" because their grass was too high, while their neighbors' grass was also and they were not "cited"; however, the Livingstons were not "cited" but were, instead, given a warning by letter placed in their mailbox telling them to cut the grass, which they did.  They were not fined, nor were they required to attend a hearing. However, Mrs. Livingston perceived this as harassment because the letter was not stamped and delivered by the United States Postal Service, but was just placed in their mailbox.

▸       the police "targeted" the Livingstons, as evidenced by them seeing police officers "watching them" from their police cars as they walked and drove around McKees Rocks,

although they did not speak to the Livingstons or ticket them or otherwise hinder their coming or going;

▸       the police harassed their tenant, to whom they rented their home after they were forced to leave, although neither Mr. nor Mrs. Livingston were specific about the nature of the harassment, and although it is only their hearsay testimony (what the tenant told them) that supports this instance of harassment.

▸       another, unnamed African American male had been physically assaulted and hospitalized after an encounter with McKees Rocks police, and the Livingstons went to that man's hospital room and taped an interview with him; this tape was not provided to defendants during discovery, nor is there any link made or even alleged between that incident and the Livingstons' instances of harassment.

Counts I through IV state similar claims on behalf of Brandon, by his parents Mark and Lorraine Livingston, Mark and Lorraine in their own right, and Kazamare Livingston against all four defendants, the Borough of McKees Rocks, the McKees Rocks Police Department, Officer Shawn Barger, and Dolpho, for the direct damages from the dog bite under Pennsylvania common law and the Political Subdivisions Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8542(b)(8).[2] Complaint, ¶¶ 12-137.

Count V states a civil rights claim under 42 U.S.C. § 1983, as well as Pennsylvania

_____

[2]       An exception to the general rule of immunity from tort liability for Pennsylvania municipalities is where injuries occur from "care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute." 42 Pa.C.S. § 88542(b)(8), "Care, custody or control of animals."

statutory claim for "willful misconduct" under 42 Pa.C.S. § 8550, for retaliation and the "concerted campaign" of harassment as set forth above, and for knowingly deploying a K-9 police dog with a "tendency to attack African American children." Complaint, ¶ 135(l).

A second "Count V" states a distinct claim against the Borough and the Police Department of McKees Rocks on behalf of Rene Surgest for racial harassment, intimidation and wrongful termination on the basis of race under section 1983, claiming that she was terminated from her job as a dispatcher for the McKees Rocks Police Department in retaliation for speaking out against the police department's handling of Dolpho and the Livingstons' incident, and a number of other discriminatory acts, practices and remarks by police officers and officials.  This count also purports to state a claim against the municipal defendants under the Pennsylvania Whistleblower Law ("PWL").

Count VI is filed on behalf of Wanda Jones-Dixon, a councilwoman on the McKees Rocks Council, who claims to have been subjected to a pattern and practice of racial discrimination, taunting, and a hostile work environment because she has been outspoken on the issue of racial discrimination in McKees Rocks, and alleges civil rights claims under sections 1983 and 1985, 42 U.S.C. §§ 1983, 1985, as well as PWL claims.

<u>Summary Judgment Standards</u>

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d

Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.  Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d

759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

<u>Summary Judgment Issues Common to All Plaintiffs</u>

<u>Police Department Not Separate Municipal Entity Under Section 1983</u>

Defendants correctly point out that the McKees Rocks Police Department is not a separate sue-able entity under section 1983, but is rather, merely a department of the liable municipality in this case, the Borough of McKees Rocks.  Plaintiffs dispute this but offer no authority to contradict defendants' well established authority.  *See, e.g., Irvin v. Borough of Darby*, 937 F.Supp. 446, 450 (E.D.Pa. 1996) ("police departments cannot be sued in conjunction with the municipality in section 1983 actions since the police department is merely an arm of the local municipality."), *citing Johnson v. City of Erie*, 834 F.Supp 873, 878 (W.D.Pa. 1993); *Agresta v. City of Philadelphia*, 694 F.Supp. 117, 118 (E.D. Pa. 1988); *Zelinski v. Pennsylvania State Police,*, 282 F.Supp.2d 251 (M.D.Pa. 2003), *aff'd in part and vacated in part*, 108 Fed.Appx. 700 (3d Cir.  2004) (Pennsylvania State Police not a "person" for purposes of section 1983 claim);  *Pahle v. Colebrookdale Tp.*, 227 F.Supp.2d 361 (E.D.Pa. 2002) (police departments merely administrative agencies of the municipalities -- not separate judicial

entities).

The McKees Rocks Police Department is not an appropriate section 1983 defendant, and judgment will be entered in its favor on all federal claims.


Dolpho Not a "Person" Under Section 1983

To state a claim under section 1983, 42 U.S.C. § 1983, a plaintiff must allege and support two elements: (1) that the conduct complained of was committed by *a "person* acting under color of state law"; and (2) that this conduct deprived plaintiff of rights, privileges or immunities secured by the United States Constitution or laws of the United States.[3]  *See West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990); *McArdle v. Tronetti*, 769 F.Supp. 188, 190 (W.D.Pa. 1991), *aff'd.* 961 F.2d 1083 (3d Cir. 1992).

Obviously, Dolpho is not a "person."  The question is whether the Court can deem Dolpho to be a "person" under section 1983.  While there are numerous cases wherein a municipality or police officers have been charged under section 1983 with using excessive force for ordering a police dog to attack a suspect, this Court has found none where the dog was named as a defendant.  Plaintiff has not offered any authority permitting an animal to be sued as a person under section 1983, probably because the question ("is a dog a "person?") answers itself. Moreover, the Court cannot perceive any strategic advantage to plaintiffs by having Dolpho as a

_____

[3]  Specifically, section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

party defendant; Dolpho cannot pay any judgment or be expected to obey a Court Order directing him to do anything or refrain from doing anything.  Dolpho will be dismissed from the case.


Kazmare Livingston

Plaintiff Kazmare Livingston has not shown up for depositions, and has failed to cooperate with discovery.  Her parents were to make her available for an independent psychiatric exam on March 21, 2005; she did not appear for her appointment, and plaintiffs' counsel has not been able to arrange an alternative appointment date.  It appears that Kazmare's whereabouts are unknown to plaintiffs' counsel.  After considering the six *Poulis* factors, the Court deems it appropriate to dismiss her claims for complete failure to prosecute.  *See Poulis v. State Farm*, 747 F.2d 863 (3d Cir.1984) (the party's personal responsibility for failure to prosecute or defend; any prejudice to the adversary from that failure; history of dilatoriness on the part of the recalcitrant party; whether the attorney's conduct was willful or in bad faith; the adequacy of alternative sanctions; whether the underlying claim appears to have merit).


Section 1983 Claims - Livingston Plaintiffs Against All Defendants

The Livingstons identify three civil rights claims under section 1983: a first amendment retaliation claim that defendants launched a "concerted campaign" of retaliatory harassment and intimidation that eventually drove them out of McKees Rocks, caused them financial hardship, emotional damages, humiliation and distress; racial profiling; and claims based upon the police dog attack, improper dog handling and training.  None of these civil rights claims are supported

by record evidence.

In order to prove retaliation for exercising first amendment rights, a plaintiff must prove three things: first, that plaintiff engaged in protected activity; second, that the government responded with retaliation; third, that this protected activity was the cause of the government's retaliation. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). There is no dispute that the first prong has been established: the Livingstons appeared on television (on the Today show) and in print, criticizing the police department for poor handling of the dog bite incident.

The Court agrees with defendants that, even assuming the first and second prongs of the retaliation test have been established, plaintiffs have offered no evidence whatsoever that the alleged acts of discrimination and harassment were causally connected to their appearing on television to complain about the police department. *See Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003) (district court properly concluded that plaintiffs provided insufficient evidence of causal link between decedent's protected activity of lodging complaints against state police officers and the incident at his residence wherein he suffered a fatal heart attack, to survive summary judgment). More fundamentally, the Court finds that the claimed incidents of harassment and discrimination, which the Court will assume happened as plaintiffs describe for purposes of this summary judgment motion, are *de minimis* and are not the sort of government conduct that can be deemed harassment or discrimination.

As recited above, the letter telling the Livingstons to cut their high grass, which they did, certainly cannot be considered official government harassment, nor can the fact that the letter was not mailed and post marked but was apparently just placed in their mailbox prove some nefarious racially based motives for the letter. Chai Livingston was indeed stopped by the police

11

for a traffic violation, but according to Mrs. Livingston, Chai admitted to her that he had in fact run a stop sign. Moreover, at the hearing on the traffic citation, his charges were reduced so that he would not get points. Lorraine Livingston Deposition, April 20, 2005, at 24.

The remaining "incidents" of harassment are supported only by the testimony of the Livingstons, but their testimony about the whens, hows and wheres of these "incidents" are so conclusory, vague and non-specific that this Court cannot find them to be acts of harassment. For instance, the Livingstons say that when police cars would pass them, the officers would "look" at them closely, and that they seemed to pass by them a lot since the incident. They also claim the defendants harassed their tenant, an African American female to whom they rented their house after they left the Borough, but they are vague and conclusory on this matter, and could not tell defense counsel, in response to his questions, the nature of the alleged harassment, dates, names, or anything specific.

The Court finds that there has been no showing of harassment by defendants against the Livingstons at all, let alone as retaliation for exercise of first amendment rights. This claim therefore must fail.

Similarly, plaintiffs make bold accusations of racial profiling, but offer no actual evidence. At the summary judgment stage of the proceedings, it is not enough to create a "metaphysical doubt" about the material facts; instead, the non moving party must point to some real evidence to support their cause. Plaintiffs have submitted to the Court a videotape which was not given to defense counsel during discovery, so defendants could not depose the African American male interviewed on the tape or otherwise respond to the accusation contained therein. The video apparently shows this man in a hospital room, having been put there by the actions of

the McKees Rocks police department, complaining about racial profiling.

The Court has not considered this videotape with its hearsay interview, because it was not produced as part of the discovery process in this case.  Assuming the video shows what plaintiffs claim it shows, there is no evidence that this isolated incident was related to the Livingstons' situation or that it was in fact racially motivated, as opposed to say, an incident of resisting arrest and use of reasonable force.  The videotape has been proffered in a vacuum, outside the rules of discovery and summary judgment procedure, with no opportunity to test its accuracy or delve into the background or circumstances leading to the hospitalization of the man; as such, it has no evidentiary value.

Also offered as evidence of a pattern and practice of racial harassment against the Livingstons and other African Americans in McKees Rocks is the testimony of plaintiffs Rene Surgest and Wanda Jones-Dixon.  The Court will address those allegations when discussing these individuals' claims, but suffice it to say, the testimony of Ms. Jones-Dixon and Ms. Surgest are innuendo laden, conclusory, and mostly vague, and the few specific items they mention cannot sustain an inference of racial profiling, against the Livingstons or generally, by the police department in McKees Rocks.

Although not well articulated, plaintiffs also state civil rights - section 1983 claims against Officer Barger and the Borough of McKees Rocks [also Dolpho and the police department, but they are being dismissed as inappropriate parties].  It is important to recognize that the unfortunate Dopho incident was accidental, as plaintiffs do not claim that Officer Barger intentionally unleashed the dog or ordered him to attack Brandon.  Plaintiffs state Dolpho "is a dog who was trained by the Officer/ handler that did not respond to the commands of the handler

causing injury." Brief in Opposition to Defendants Motion for Summary Judgment, at 6.

While the line between what constitutes mere negligence and what constitutes deliberate or reckless indifference for purposes of a Section 1983 constitutional claim can be difficult to draw, it is not in this case, and plaintiffs do not even attempt to state a claim of deliberate or reckless indifference. *See Daniels v. Williams*, 474 U.S. 327, 327 (1986) ("Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property"); *Collins v. City of Harker Heights*, 503 U.S. 115 (1992) (city's customary failure to train or warn its employees about known hazards in the workplace did not violate Due Process Clause); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1146 (3d Cir.1990) ("[m]ere negligence cannot trigger due process protection ... [t]he Court explicitly refused [in Daniels ]. The section 1983 claim against Officer Barger must be dismissed.

Plaintiffs have not even attempted to muster evidence to support a "failure to train" claim against the Borough of McKees Rocks.   A municipality may be held constitutionally liable under section 1983 for failing to properly train its employees and officers. *City of Canton v. Harris*, 489 U.S. 378, 387  (1989); *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (plaintiff must show not only an unlawful policy or custom of the municipality, but also that such policy or custom was the proximate cause of his  injuries by showing a plausible nexus or affirmative link between the alleged policy or custom and the injuries.).  Such a claim, however, is difficult to establish. *Reitz*, 125 F.3d at 145.  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.   Failure to adequately screen or train

14

municipal employees can ordinarily be considered deliberate indifference only where the failure

has caused a pattern of violations.  *See Bd. of Commr's of Bryan County v Brown*, 520 U.S. 397,

408-09 (1997). Although it is *possible* to maintain a claim of failure to train without

demonstrating such a pattern, the *Bryan County* Court made clear that the burden on the plaintiff

in such a case is high. *Id.*

Additionally, a mere conclusory allegation that an officer is unsatisfactorily trained will

not "suffice to fasten liability on the city, for the officer's shortcomings may have resulted from

factors other than a faulty training program. It may be, for example, that an otherwise sound

program has occasionally been negligently administered." *City of Canton,* 489 U.S. at 390-91. It

also will not "suffice to prove that an injury or accident could have been avoided if an officer

had had better or more training, sufficient to equip him to avoid the particular injury-causing

conduct. Such a claim could be made about almost any encounter resulting in injury." *Id*. at 391.

More importantly, "adequately trained officers occasionally make mistakes; the fact that they do

says little about the training program or the legal basis for holding the city liable." *Id.*

Additionally, when an individual avers that a "municipality has not directly inflicted the

injury, but has caused an employee to do so, stringent standards of culpability and causation

must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the

conduct of its employee." *Reitz*, 125 F.3d at 145. Thus, in order to succeed on such a claim, it

must be proven that "the training deficiency actually caused the injury." *Id.* (citing *City of*

*Canton*, 489 U.S. at 391). Stated more accurately, "[a] plaintiff pressing a § 1983 claim must

identify a failure to provide specific training that has a causal nexus with their injuries and must

demonstrate that the absence of that specific training can reasonably be said to reflect a

deliberate indifference to whether the alleged constitutional deprivations occurred." *Id.* (emphasis added).  "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197.

It is not sufficient at the summary judgment stage of proceedings merely to *mention* general or *potential* training and disciplinary deficiencies.  Plaintiffs fail to support their claim of *Monell* liability against McKees Rocks with actual record evidence of specific training or disciplinary deficiencies that might have contributed to the police dog attack; in fact, they do not make even a half-hearted attempt to do so.  Thus, there is no genuine issue of material fact on this issue, and the Court will grant summary judgment for McKees Rocks.

<u>Livingstons' State Common Law and Statutory Claims</u>

Having granted summary judgment in favor of defendants on the Livingstons' federal claims under section 1983, only their Pennsylvania common law and statutory claims based on the PSTCA  remain.  It appears that they have stated a common law personal injury claim for Brandon resulting from the unprovoked police dog attack, and at least some of their own claimed damages under a "zone of danger" - bystander theory.  *See, e.g.,  Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979);  *Shumosky v. Lutheran Welfare Services of Northeastern Pennsylvania Inc.*, 784 A.2d 196 (Pa. Super. 2001).  Such claims would remain viable against the municipal defendant because the PSTCA specifically excludes "animal control" cases from the immunity otherwise afforded Pennsylvania municipalities under state law.  42 Pa.C.S. § 8542(b)(8).

Absent extraordinary circumstances, where the federal claims are dismissed on a motion for summary judgment, the district court should "refrain from exercising pendent jurisdiction

[over the state law claims]."  *Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182, 215 (D. N.J. 1993) *aff'd* 43 F.3d 1462 (3d Cir. 1994) (citations omitted).  *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

There are no "extraordinary circumstances" which warrant the exercise of jurisdiction over the state claims, and the Court declines to exercise supplemental jurisdiction over the Pennsylvania common law claims, which therefore will be dismissed without prejudice.  Plaintiff may attempt to pursue these claims in state court pursuant to 42 Pa.C.S. § 5103(b) by filing the appropriate certifications.[4]  *See Williams v. F.L. Smith Mach. Co.*, 395 Pa. Super. 511, 577 A.2d 907 (1990); *Electronic Lab Supply Co. v. Cullen*, 782 F.Supp. 1016, 1021 (E.D.Pa.1991) (discussing transfer to Court of Common Pleas pursuant to 42 Pa. C.S. §5103(b)).  Plaintiff may effect the transfer by promptly filing a certified transcript of the final judgment and the related pleadings to the proper tribunal. 42 Pa. C.S. § 5103(b)(2).

---

[4]  This "safe harbor" provision provides that a matter filed in a court or tribunal without jurisdiction shall not be dismissed, but may be transferred to a court with jurisdiction. Subsection (b) provides in pertinent part: "Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by . . . filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth."  42 Pa.C.S. § 5103(b)(2).

<u>Wanda Jones-Dixon's Claims</u>

Ms. Jones-Dixon claims that, as a result of her complaining about racism and police misconduct in the past, she has been subjected to retaliation and that there has been a "continuing pattern and practice of discrimination and criminal conduct being levied upon her by Borough officials over an extended period of time."  Brief in Opposition to Defendants' Motion for Summary Judgment" (Document No. 83) at 8.  Her civil rights and Pennsylvania Whistleblower Law ("PWL") claims are directed only at the Borough and the police department.

The Court agrees with defendants that her civil rights and Whistleblower Law claims are time barred, that she has failed to show the elements of a civil rights claim in any event, and that she is not an "employee" of McKees Rocks for purposes of the Whistleblower Law.

The PWL, 43 Pa. Stat.Ann. §§ 1421-1428, provides, in relevant part, as follows:

Protection of employees

(a) Persons not to be discharged.--No <u>employer</u> may discharge, threaten or otherwise discriminate or retaliate against <u>an employee</u> regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

(b) Discrimination prohibited.--No <u>employer</u> may discharge, threaten or otherwise discriminate or retaliate against <u>an employee</u> regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 Pa. Stat.Ann. § 1423.

Also relevant, the PWL provides that a person alleging a violation of the act shall bring suit within 180 days of the occurrence, defines "employee" as a "person who performs a service

18

for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body," and "employer" as a "person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." 43 Pa. Stat.Ann. §1424(a) § 1422.

Ms.  Jones-Dixon is a public official *elected* by the citizens of McKees Rocks to Borough Council.  She was not *hired* by the Borough to work for that "public body"  As Borough Councilwoman, she is McKees Rocks' highest elected legislative official, she does not have a supervisor, and her compensation is set according to the Borough Code.  53 Pa.C.S. § 4601. Defendants assert that under Pennsylvania Borough Code, Plaintiff Jones-Dixon cannot be an "employee" of the very Borough of which she is its highest elected legislative official.  *See* 53 Pa.C.S. §§ 45806, 45811-45818, 45821.

There is no case law directly on point, but plaintiffs offer no authority to refute defendants' position.  This Court agrees with defendants that the plain language of the PWL, *in pari materia* with the Borough Code, makes plaintiff Jones-Dixon, in effect, the "public body" who controls or supervises the employees of McKees Rocks.  Because she is not an "employee" within the meaning of the Whistleblower Law, Ms.  Jones-Dixon cannot claim damages under that act.

Moreover, if plaintiff was an employee, her whistleblower claims would be time barred by the 180 day statute of limitations.  Defendants assert, and plaintiff does not counter with any record facts,[5] that the incidents described by Ms. Jones-Dixon regarding certain racist remarks by

---

[5]  Plaintiffs Responsive Concise Statement of facts with regard to Ms.  Jones-Dixon lists a string of perceived incidents of harassment and intimidation, including death threats, with precious few specific references as to what, when and who, the most specific date mentioned

council members and police officers, threatening behavior and intimidation by police officers, harassment by the Borough's Housing Authority for complaints of illegal dumping in the community, and a few other incidents, all occurred before 2001 (most of the incidents were from 1993 through 1996 by plaintiff's own testimony), and are therefore well beyond the statute of limitations established within the Pennsylvania Whistleblower Law.  43 Pa.  Stat.Ann. § 1424(a). Similarly, the "borrowed" statute of limitations for civil rights violations under section 1983 requires that suit be filed within two years after the alleged violations took place.  *Wilson v. Garcia*, 471 U.S. 261 (1985);  *Smith v. City of Pittsburgh*, 764 F.2d 188, 192, 194 (3d Cir. 1985) (holding that two-year statute of limitations period applies to all section 1983 actions brought in Pennsylvania).

Plaintiff Jones-Dixon attempts, without authority, to expand the respective statutes of limitations by "piggy-backing" her claims onto those of the Livingstons and the other plaintiffs, but as we have seen, the Livingstons and other plaintiffs do not have any civil rights claims, and she has no standing to use their separate claims as a new triggering date for her statutes of limitations.    Accordingly, Ms. Jones-Dixon's claims must be dismissed.  Whatever merit her allegations may have had at one time, they have become stale and cannot be rejuvenated by the injection of other persons' claims into hers.

---

being "death threats after 2000 up to the present," with no knowledge of the identity of the alleged threats.

Rene Surgest

Plaintiff Rene Surgest was a dispatcher at the McKees Rocks Police Department,
beginning in 1998, and she no doubt is an employee for purposes of the PWL.  Plaintiff became a
full time dispatcher in 2000; there were four full time dispatchers at that time.

Plaintiff testified at her deposition to a series of hostile actions by certain police officers
and the police chief against her and against African Americans in the community from 1998
through 2003; most of these were of the racial slur variety against others, but some of them were
directed at her or she was exposed to them.  For instance, sometime in or around 2000, some
officers had downloaded onto the computer in the dispatch room a clip from the movie "Blazing
Saddles" which used the "N word" in a derogatory manner.  Ms. Surgest also describes a series
of incidents directed at her, such as unnamed police officers aiming laser sights from their guns
near her head or having her glasses broken.

As a result of these incidents and her observations of what she believed to be racial
profiling and use of racial slurs, Ms. Surgest filed four or five complaints with the Pennsylvania
Human Relations Commission, alleging retaliation racial harassment and hostile work
environment.  At least some of these claims were still pending as of April 1, 2005, when Ms.
Surgest was deposed for this case.  Ms. Surgest also complained to both Pennsylvania Senators,
the Attorney General, the FBI, the Pennsylvania State Police, Ms. Jones-Dixon, and others. After
the Livingstons' dog bite incident, she complained and criticized the police department about its
handling of the case.

In Count V of the amended complaint, plaintiff alleges she was terminated in January,
2004, in retaliation for her criticisms and filing these complaints.  Defendants assert that Ms.

Surgest's position was eliminated when the Borough switched to the county-wide 911 system. She and the other three dispatchers were notified in October, 2003, that their positions were being eliminated.  One of the four full time dispatchers was placed in another position within the police department, Janelle Young, an African American woman who had the most seniority of the dispatchers.  Surgest Dep., at 24.  Ms. Surgest did not file a complaint with the PHRC about her termination because "they were well within their rights to eliminate that job." Surgest Dep., at 125.

First Amendment retaliation claims are analyzed under the burden-shifting framework set forth in *Mount Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977).  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 144 (3d Cir. 2000); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). Under this analytical framework, plaintiff must first establish that she engaged in an activity protected by the First Amendment. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). Plaintiff must then submit competent evidence that defendants responded with some adverse action. *Id.* Plaintiff may satisfy this element upon proof that "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 235 (3d Cir. 2000) (internal quotation omitted). Finally, plaintiff must submit evidence of a causal link between the protected activity and Defendants' retaliatory conduct, *Eichenlaub*, 385 F.3d at 282; *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001), by demonstrating that the protected activity was a substantial or motivating factor in defendants' decision to take the adverse action.  *Nicholas*, 227 F.3d at 144.

Upon satisfaction of plaintiff's burden, the burden shifts to defendant to show by a

preponderance of the evidence that the adverse actions would have been taken irrespective of plaintiff's having engaged in a protected activity. *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998); *Nicholas*, 227 F.3d at 144.   Thus defendants may defeat plaintiff's case by showing that they "would have taken the same action even in the absence of the protected conduct." *Bd. of County Comm'rs. v. Umbehr*, 518 U.S. 668, 675 (1996); *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 885 (3d Cir. 1997).

Similarly, the PWL provides: "It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual."  43 Pa. Stat.Ann. § 1424(c). *See also O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A.2d 1194 (2001) (to successfully rebut prima facie case of reprisal for purposes of Whistleblower Law, employer must prove that it would have taken the same adverse employment action absent the employee's good-faith report of wrongdoing).

Ms. Surgest's reports and complaints of wrongdoing are obviously protected by the first amendment, and she plainly suffered an adverse employment decision when she was terminated. Assuming, for sake of argument, that plaintiff can establish a causal link between her many reports of wrongdoing and her termination, defendants have offered undisputed evidence that she was terminated as a cost-cutting measure when McKees Rocks decided to join the county-wide 911 emergency response system, and eliminate all of their dispatching positions.  In fact, by her own admission, defendants "were well within their rights to eliminate that job." Surgest Dep., at 125.  Thus, defendants have defeated plaintiff's case by showing that they would have taken the same action even in the absence of the protected conduct, and summary judgment will be granted

23

in favor of all defendants on Ms. Surgest's claims.

For the foregoing reasons, summary judgment will be granted in favor of the defendants against all of the plaintiffs.  The Livingstons' state law claims arising from the dog bite incident will be dismissed without prejudice, however, so that they may file the appropriate certifications in state court.

An order will be entered in accordance with the foregoing memorandum opinion.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All counsel of record as listed below

Eugene G. Berry, Esquire
Carl Tate, Esquire
2403 Sidney Street
River Park Commons, Suite 245
Pittsburgh, PA 15203

Paul D. Krepps, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
600 Grant Street, USX Tower
Suite 2900
Pittsburgh, PA 15219